UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN SMITH,

                           Petitioner,                    **DECISION AND ORDER**

              -vs-                                        No. 01-CV-0758

GLENN S. GOORD, Commissioner NYS
Department of Correctional Services,

                           Respondent.

_____

## INTRODUCTION

Petitioner, John Smith ("Smith"), filed this *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on charges of

felony assault and attempted murder. The parties have consented to disposition of this matter by

the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The conviction at issue here stems from an incident that occurred during the early

morning hours of July 29, 1994, when Smith broke into the apartment of his former girlfriend,

Kimberly Rothfuss ("Rothfuss"). She reported the assault to the police and Smith was arrested

later that day. According to Rothfuss's grand jury testimony, Smith bound and gagged her, raped

her, and stabbed her repeatedly in the left temple area with a pair of scissors. Rothfuss testified

before the grand jury that after Smith ceased the assault, he stole several items from her

apartment. The grand jury indicted Smith on charges of second degree attempted murder (N.Y.

Penal Law §§ 110.00, 125.25(1)); first degree burglary (N.Y. Penal Law § 140.30(2)); first

degree rape (N.Y. Penal Law § 130.35(1)); first degree robbery (N.Y. Penal Law § 160.15(3));
and first degree (felony) assault (N.Y. Penal Law § 120.10(4)).

About a month after the attack, Rothfuss received a number of hang-up telephone calls
and threats. Fearing for her safety, Rothfuss met with members of the Monroe County District
Attorney's office in August 1994. Rothfuss was given the pager number of James Rossiter
("Rossiter"), an investigator with the District Attorney's office, and told that if she "felt scared or
[she] needed to talk to somebody or [she] received any threats, [she] was to page him
immediately." H.116.[1] After receiving further annoying telephone calls, Rothfuss paged Rossiter.
The investigator informed her that a recording device could be hooked up to her telephone and
that she could use it tape the telephone calls if she wished to do so. H.119-20. On August 22,
1994, Rothfuss received a phone call from a woman who informed her that there was a
"contract" out on her life. Fearful for her and her infant son's safety, Rothfuss agreed to have the
recording device installed on August 23, 1994. On August 24 and September 11 of 1994,
Rothfuss taped telephone conversations which Smith had initiated while in custody on the
charges arising out of the July 29th incident. These were held to be admissible into evidence.

Smith's jury trial was held in Monroe County Court (Affronti, J.).  At trial, Rothfuss
testified that on the night of July 29, 1994, she was getting for bed when Smith "jumped through
the window" of her bedroom. T.453.[2] Smith was a former boyfriend with whom Rothfuss had an
infant son.  Smith tied Rothfuss's hands with a telephone cord and shoved a washcloth down her
throat. He ordered her to be quiet and stated that he was going to "get some [sex] from [her]."

---

[1] Citations to "H.__" refer to the transcript of the suppression hearing held on March 3, 1995.

[2] Citations to "T.__" refer to the trial transcript.

T.455. According to Rothfuss, Smith forcibly engaged in intercourse with her and ejaculated on her legs. Smith then began threatening to kill her. T.458-60.  The attack culminated in Smith repeatedly stabbing Rothfuss with a pair of scissors in the left temple. T.462-63.  Rothfuss testified that the last time he stabbed her, she felt her "bone was crushing." T.464. As soon as she let her body go limp, Smith stopped stabbing her. T.465. Rothfuss then decided to "play dead." Smith got off the bed, wrapped her body in a comforter and said, "Murder she wrote." T.465. Rothfuss heard Smith moving about her apartment for several minutes, opening the refrigerator and using the bathroom. T.466. When he finally left, Rothfuss ran outside to the security post in front of her apartment complex and called the police. She testified that as she left her apartment, she noted that Smith had stolen her VCR, cordless phone, and their son's clothes. T.468.

The prosecution introduced into evidence tapes of conversations between Rothfuss and Smith which occurred on August 26, 1994 and September 11, 1994, in which Rothfuss asked Smith why he had tried to kill her. Smith did not deny that he was trying to kill her. *See* T.479-82 (Exhibits 35, 36).[3]

Upon defense counsel's motion, the trial court dismissed the robbery charge and charged second degree assault as a lesser included offense. The jury returned a conviction acquitting Smith of rape and burglary but convicting him of first degree assault and attempted second degree murder. He was sentenced to twelve and one-half to twenty-five years on the attempted murder charge and seven and one-half to fifteen years on the felony assault charge, those sentences to run concurrently with each other.

---

[3] The trial exhibits were not provided to this Court; any references to the substance of the conversations comes from the prosecutor's summation as set forth in the trial transcript, defendant's appellate brief, and the Appellate Division's order affirming Smith's conviction.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction on June 18, 1999. The New York Court of Appeals denied leave to appeal on August 10, 1999.

On November 9, 1999, Smith brought a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in which he alleged that (1) the grand jury indictment and grand jury proceeding were defective, and (2) defendant's felony assault conviction must be dismissed because it merged with his attempted murder conviction. This application was denied by the trial court. Smith also challenged the effectiveness of his appellate counsel in an application for a writ of error *coram nobis* filed on January 5, 2001. This, too, was summarily denied.

This habeas petition followed in which Smith has raised the following grounds for relief: (1) the trial court erred in admitting the taped telephone conversations (2) appellate counsel was ineffective in failing to challenge the trial court's decision not to remove trial counsel for allegedly failing to notify petitioner of his right to testify before the grand jury; and (3) appellate counsel was ineffective in failing to argue that trial counsel was ineffective in failing to move to dismiss the felony assault conviction on the ground that it merged with the attempted murder conviction. Respondent has not raised the defense of non-exhaustion, and it appears that all of Smith's claims are fully exhausted and properly before this Court for review. *See* 28 U.S.C. § 2254(b)(1). For the reasons set forth below, the petition is dismissed.

## DISCUSSION

### Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Anti-terrorism and Effective Death

Penalty Act ("AEDPA") in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

**Merits of the Petition**

**1.        Erroneous admission of taped telephone conversations**

Smith contends that the trial court erred in admitting into evidence audiotapes of telephone conversations between him and complainant Rothfuss because Rothfuss was acting as an agent of the police at the time. The purely private acts of private citizens do not implicate the Fourth, Fifth and Sixth Amendments, all of which were meant to regulate government activity. *See*, *e.g.*, *Burdeau v. McDowell*, 256 U.S. 465, 474 (1921) ("[The Fourth Amendment's] origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies[.]"); *United States v. Romero*, 897 F.2d 47, 52 (2d Cir. 1990) ("*Miranda* does not apply to incriminating statements made to private persons in the absence of police subterfuge or intimidation."); *United States v. Antonelli*, 434 F.2d 335, 337 (2d Cir. 1970) ("[T]he Fifth Amendment privilege against self-incrimination does not require the giving of constitutional warnings by private citizens or security personnel employed thereby who take a suspect into custody."); *United States v. Bennett*, 709 F.2d 803, 805 (2d Cir. 1983) ("[T]he surreptitious search of premises by a private party does not violate the Fourth Amendment."). Thus, in order to

show that his Fifth Amendent right against self-incrimination and his Sixth Amendment right to

counsel were violated, Smith must establish that Rothfuss was acting as an agent of the state.

The law is well-established that "the Sixth Amendment right to counsel is violated when

a private individual, acting as a government agent, 'deliberately elicit[s]' incriminating

statements from an accused in the absence of his counsel." *United States v. Miller*, 116 F.3d 641,

645 (2d Cir. 1997) (quoting *Massiah v. United States*, 377 U.S. 201, 206 (1964)). "The *Massiah*

rule covers only those statements obtained as a result of an intentional effort *on the part of the*

*government*[.]" *United States v. Stevens*, 83 F.3d 60, 64 (2d Cir.), *cert. denied*, 519 U.S. 902

(1996) (emphasis in original). However, the *Massiah* rule does not operate to exclude statements

"made completely voluntarily by an accused." *Id.* at 64 (citing *United States v. Accardi*, 342 F.2d

697, 701 (2d Cir. 1965)). Rather, "*Massiah* is supposed to cover situations that 'look' like

government interrogations." *Stevens*, 83 F.3d at 64.

Here, Smith cannot make the required showing that the victim was acting as an agent of

the state or that the incriminating statements at issue were obtained as a result of an "intentional

effort" on the part of the district attorney's office. Investigator Rossiter testified that the district

attorney had asked him to investigate a complaint received from Rothfuss that she had received a

number of hang-up calls and that she had been approached by a member of Smith's family who

told her that it would be "beneficial" is she would drop the charges against Smith. Rossiter spoke

with Rothfuss and suggested that if she were amenable to the idea, there could be a tape placed

on her line, "mainly for her protection." H.70. Rossiter testified that "if there were any threats

made by the family, by the defendant or by anyone else, [they] had these threats on tape." H.70.

The next day, after receiving additional hang-up calls, Rothfuss requested the tape-recording

equipment. Rossiter showed her how to operate the tape recorder but he did not instruct her to tape-record any communications that Smith might make with her, nor did he instruct her on how to carry on a conversation with Smith. H.73. Rothfuss testified that Rossiter told her that it was her decision as to which conversations, if any, she wanted to record. H.121-22.  Rothfuss was never advised by any member of the district attorney's office or law enforcement agency to speak with Smith, nor was she advised to initiate any conversations with him. She did not receive instruction as to how to conduct a conversation with Smith. H.122-26. At no time relevant to these proceedings did Rothfuss telephone Smith.

The trial court denied Smith's motion to exclude the tapes in a thorough written opinion containing detailed findings of fact which are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).  Based on the hearing testimony detailed above, the court further found that Smith "[u]nquestionably" initiated the telephone calls and that Rothfuss "was not instructed by the police or the District Attorney to ask [him] any specific questions." Monroe County Court Order dated August 11, 1994, at pp. 6-11, attached as Appendix D to Respondent's Answer (Docket #15). Therefore, the court held, Smith's statements "were not the product of police intervention or involvement, and any police conduct was limited solely to that of passive recipients of the tape recorded conversations." *Id.* (citations omitted). On direct appeal, the Appellate Division held that the record supported the trial court's determination that "the victim was not acting as an agent of law enforcement when recording [the] conversations" with Smith. *People v. Smith*, 262 A.D.2d 1063, 694 N.Y.S.2d 256 (App. Div. 4th Dept. 1999) (citations omitted). Smith has not borne his burden of adducing clear and convincing evidence to overcome the presumption of correctness that must be accorded to the state court's factual findings.

Furthermore, in light of the facts recounted above, the state courts did not unreasonably apply clearly established federal law when they held that the victim's conduct tape-recording petitioner's phone calls using equipment provided by the district attorney's office was not state action for the purpose of sustaining a claim of infringement of petitioner's constitutional rights.

Assuming *arguendo* that the state court erred in allowing the admission of the taped conversations, the error was harmless under any standard because other evidence adduced at trial overwhelmingly established that Smith was guilty of the attempted murder charge.[4] Several times during the taped telephone conversations, Rothfuss asked Smith why he had tried to kill her. Smith did not deny that he tried to kill her; instead, he either changed the subject or said that he was under the influence of drugs at the time. At one point, Rothfuss asked, "What did I ever do to you for you to have to try and kill me? Smith answered, "Listen, it was a lot of stuff goin' [*sic*] on[,] right?" Petitioner's Appellate Brief at 13 (citing Trial Exhibit 35), attached as Appendix C to Respondent's Answer (Docket #15). Smith contends that because he failed to deny that he was

---

[4] When faced with a constitutional violation on direct appeal, a court must reverse the judgment of the court below unless the constitutional error is "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), however, the Supreme Court set forth a "less onerous" standard for evaluating, on collateral review, the impact of a constitutional error. Pursuant to *Brecht*, a federal court may grant habeas relief on the basis of a constitutional error only if it determines that the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Under the *Brecht* standard, a petitioner should prevail when the trial record is "so evenly balanced that a conscientious judge is in *grave doubt* as to the harmlessness of the error." *O'Neal v. McAnnich*, 513 U.S. 432, 436 (1995) (emphasis supplied). In other words, if the reviewing court's mind is "in virtual equipoise as to the harmlessness" of the error, it must conclude that the error was harmful. *Id.* at 435. The Second Circuit has reserved the question of which standard of review should apply, in the wake of AEDPA, to the question of whether a non-structural trial error challenged on habeas review is harmless where, as here, the state court itself did not reach the issue of harmlessness. *Howard*, 406 F.3d at 122 (citing *Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005); *Gutierrez v. McGinnis*, 389 F.3d 300, 306-07 & n.7 (2d Cir. 2004); *Ryan v. Miller*, 303 F.3d 231, 245-46 (2d Cir. 2002)). As the circuit court noted in *Gutierrez*, the Supreme Court, in *dicta*, has applied the *Brecht* standard to such a case. *Benn*, 402 F.3d at 105 (citing *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001)). According to the Second Circuit, another possibility is that, even in the absence of a state court adjudication on harmlessness, the reviewing court should inquire whether the state court's affirmance of the conviction is contrary to, or an unreasonable application of, the *Chapman* standard. 402 F.3d at 105. In *Benn*, the Second Circuit declined to resolve the issue because it found that the result was the same under either standard. *Id.*

trying to kill her, the jury could have found that this was a tacit admission that he was trying to kill Rothfuss when he assaulted her.

There is no question that the evidence of the taped conversations was damaging to Smith. However, the taped conversations were by no means the linchpin in the case against Smith. Even without hearing the conversations, the jury easily could have found Smith guilty of attempted murder based on the sheer brutality of his actions in stabbing the victim's skull repeatedly first with a knife and then with a pair of scissors. The jury also heard that before he began stabbing Rothfuss, Smith pinned her down and began talking about how he was going to kill her–"shooting, stabbing, burning [her] house down." T.460. When Rothfuss attempted to reach for the phone to call 911, Smith "freaked out" and "got very mad." T.461. He then took the knife in one hand and started "massaging the left side of [her] temple" with his other hand. *Id.* According to Rothfuss, Smith took the knife and "ke[pt] putting it to [her] throat and then putting it to [her] head" until he "finally c[ame] back to [her] temple." T.462. Smith then began stabbing her with the knife there, "twisting" the knife as he did so. *Id.* Once he drew blood, he put the knife away and took out a pair of scissors and continued to stab her in the same place. T.463. Furthermore, the jury also heard that Smith only ceased attacking Rothfuss after she made herself go limp. The jury could have inferred that Smith stopped stabbing her because he had accomplished his avowed objective of killing her. Finally, the jury was entitled to consider Smith's parting comment as he wrapped Rothfuss's body in a blanket: "Murder she wrote." In light of all of this evidence, I am convinced beyond a reasonable doubt that even without having heard the taped conversations, the jury would have convicted Smith of attempted murder.

2.      **Ineffective assistance of appellate counsel**

a.      **Legal standard**

A claim for ineffective assistance of appellate counsel is evaluated upon the same

standard as is a claim of ineffective assistance of trial counsel–namely, the two-pronged analysis

set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Mayo v. Henderson*, 13 F.3d 528,

533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)), *cert. denied*, 508

U.S. 912 (1993)).  A petitioner alleging ineffective assistance of appellate counsel must prove

both that appellate counsel was objectively unreasonable in failing to raise a particular issue on

appeal, and that absent counsel's deficient performance, there was a reasonable probability that

defendant's appeal would have been successful. *Mayo,* 13 F.3d at 533-34; *Smith v. Robbins*, 528

U.S. 259, 285 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001). In other words, not only

must a petitioner show that counsel's performance fell below objective standards of

reasonableness, he must also show that he suffered constitutional prejudice as a result of

counsel's mistakes. *See id.*   Appellate counsel "need not (and should not) raise every

nonfrivolous claim, but rather may select from among them in order to maximize the likelihood

of success on appeal."  *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes,* 463

U.S. 745, 750-54 (1983)); *accord, e.g., Sellan v. Kuhlman,* 261 F.3d 303, 317 (2d Cir. 2001)

("This process of 'winnowing out weaker arguments on appeal and focusing on' those  more

likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate

advocacy."). The habeas court should not second-guess the reasonable professional judgments of

appellate counsel as to the most promising appeal issues.  *Jones*, 463 U.S. at 754; *see also*

*Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).

### b.   Alleged grounds for ineffectiveness

#### i.   Failure to challenge trial court ruling regarding removal of trial counsel

Smith contends that appellate counsel was ineffective in failing to argue on direct appeal that the trial court erred in its ruling when it denied Smith's request to have his trial counsel removed. Smith complained that trial counsel had failed to notify him of his state statutory right pursuant to C.P.L. § 290.10 to testify before the grand jury.

New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel. *See, e.g.*, *People v. Wiggins*, 89 N.Y.2d 872, 675 N.E.2d 845, 653 N.Y.S.2d 91 (N.Y. 1996) ("Defense counsel's failure to timely facilitate defendant's intention to testify before the Grand Jury does not, *per se*, amount to a denial of effective assistance of counsel under the circumstance of this case[.]"); *People v. Dennis*, 295 A.D.2d 755, 744 N.Y.S.2d 534 (App. Div. 3d Dept. 2002) (holding that "defense counsel's failure to notify the People that defendant wished to testify before the Grand Jury does not, by itself, amount to ineffective assistance of counsel" and finding that "defendant's conclusory allegation that this failure may have impacted [his] ability to present a viable defense to be insufficient to support an ineffective assistance of counsel claim") (alteration in original) (quotation omitted). Likewise, federal habeas courts repeatedly have declined to find that such claims warrant habeas relief, primarily because a petitioner typically cannot show that he was prejudiced by trial counsel's failure to secure his appearance before the grand jury. *See, e.g.*, *Bingham v. Duncan*, No. 01 Civ. 1371, 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) (rejecting petitioner's claim that counsel was ineffective for failing to

secure petitioner's right to testify before the grand jury and stating that "[g]iven that any defect in

the grand jury proceeding was cured by petitioner's subsequent conviction, . . . it necessarily

follows as a matter of law that petitioner cannot establish that any errors made by his trial

counsel with respect to the grand jury proceeding prejudiced him, thereby foreclosing the

possibility of a Sixth Amendment violation") (internal quotation omitted); *Hutchings v. Herbert*,

260 F. Supp.2d 571, 578 & n. 2 (W.D.N.Y. 2003) (rejecting ineffective assistance of counsel

claim; by failing to show "what he would have told the grand jury that would have prevented his

indictment," petitioner "failed to demonstrate any prejudice from the alleged failure of his

attorney to ensure an opportunity for him to testify before the grand jury") (and cases cited

therein); *Cates v. Senkowski*, No. 02 Civ. 5957, 2003 WL 1563777 at *3 (S.D.N.Y. Mar. 17,

2003) (rejecting petitioner's claim that counsel was ineffective for failing to ensure petitioner's

ability to testify before the grand jury; stating that "[e]ven if petitioner could establish that his

counsel's assistance fell below an objective standard, he definitely has not satisfied *Strickland*'s

requirement of prejudice [since] conviction by the petit jury cures any prejudice from such an

error during the grand jury proceedings").

　　　　Because an ineffective assistance of counsel claim premised on trial counsel's failure to

notify petitioner of his right to testify before the grand jury in all likelihood would not have

succeeded on direct appeal, appellate counsel's omission of this claim did not prejudice Smith.

Omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant.

*See Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must

demonstrate that 'there was a "reasonable probability" that [his] claim would have been

successful . . . .'") (alteration in original) (quoting *Claudio*, 982 F.2d at 803)). Since Smith has

failed to fulfill the "prejudice" prong of *Strickland*, there is no need for this Court to consider the "deficient performance" prong of the test. This claim affords no basis for habeas relief.

> **b.     Failure to argue that trial counsel was ineffective in failing to move for dismissal of the felony assault charge**

On direct appeal, counsel argued that Smith's felony assault conviction "merged" with his attempted murder conviction such that the first degree (felony) assault conviction must be dismissed; counsel contend that in order to support a conviction for felony assault, the underlying felony must be independent of the assault itself. The Appellate Division declined to consider the claim on the basis that defense counsel failed to preserve it by lodging a contemporaneous objection at trial. *People v. Smith*, 262 A.D.2d at 1063, 694 N.Y.S.2d 2 (citing N.Y. Crim. Proc. Law § 470.05(2)).

Under the former penal law in New York, any felony, including assault, could be the predicate for a felony murder. *People v. Miller*, 32 N.Y.2d 157, 160, 297 N.E.2d 85, 87 (N.Y. 1973). Since every homicide, not excusable or justifiable, occurs during the commission of assault, every homicide would constitute a felony murder under the old statute. New York remedied this defect by including in the revised Penal Law a list of specified felonies (robbery, burglary, kidnaping, arson, rape in the first degree, sodomy in the first degree, sexual abuse in the first degree, escape in the first or second degree) as the only felonies forming a basis for felony murder. N.Y. Penal Law § 125.25(3); *see also People v. La Marca*, 3 N.Y.2d 452, 465, 165 N.Y.S.2d 753, 144 N.E.2d 420, 428 (N.Y. 1957) ("One necessary qualification has been engrafted onto our felony murder rule and that is that the underlying felony must be independent of the homicide for, otherwise, every homicide, not justifiable or excusable, would occur in the

commission of a felony, namely, the assault which ended in death with the result that premeditation, deliberation and intent to kill would never have to be established to convict an accused of murder in the first degree. The felony that eliminates the quality of the intent must be one that is independent of the homicide and of the assault merged therein, as *e.g.*, robbery or larceny or burglary or rape[.]").

Here, to find Smith guilty of first degree assault under the felony assault subsection, the jury would have had to determine that Smith caused "serious physical injury" to the victim "[i]n the course of and in furtherance of the commission or attempted commission of a felony or of immediate flight therefrom." N.Y. Penal Law § 120.10(4). The possible underlying felonies charged in the indictment and submitted to the jury were attempted murder, burglary, and rape. *See* T.714 (court instructed the jury that they must find that "the defendant caused such serious physical injury to [the victim] while the course of and in furtherance of the commission of the crimes that I've noted, the crime of attempted murder, and/or the crime of burglary, and/or the crime of rape").  The jury acquitted Smith of burglary and rape but convicted him of attempted murder. Thus, based on the jury's verdict, the only felony that could have formed the predicate for Smith's felony assault conviction was the attempted murder charge. It appears clear that § 120.10(4) is intended to impose strict liability for injuries inflicted during the commission of or immediate flight from a felony; however, in light of the case law discussed above, it seems that the reference to a "felony" in § 120.10(4) must be qualified to require a felony independent of the assault leading to those injuries. In *People v. Donahue*, the court found that defendant's conviction for felony assault could not stand where defendant also was convicted of first degree assault under § 120.10(1) (with intent to cause "serious physical injury," defendant caused such

injury by means of a deadly weapon or dangerous instrument). The court found that the language of the felony assault statute excludes the use of an assault, in particular, the same assault, as the underlying felony. *People v. Donahue*, 130 Misc. 2d 1080, 498 N.Y.S.2d 988 (N.Y. Co. Ct.1986) (citing *People v. La Marca*, 3 N.Y.2d at 465).

Smith's argument thus appears to have some force. It would have been better practice for trial counsel, upon hearing the jury's verdict, to have either moved to dismiss the assault conviction or stated that he was reserving motions to at least preserve the possibility of raising this argument later. However, I cannot find that counsel's omission resulted in substantial prejudice to Smith. First, counsel's failure to object did not preclude the appellate court from ruling on the issue on direct appeal when appellate counsel raised it. As the court noted in disposing of Smith's appeal, New York law allows the review of unpreserved claims "in the interest of justice." *People v. Smith*, 262 A.D.2d at 1063, 694 N.Y.S.2d 2 (citing N.Y. Crim. Proc. Law § 470.15(6)(a)). The court, however, declined to exercise its discretionary power to review the claim.

Even if the assault conviction had been dismissed, it would not have shortened Smith's term of imprisonment since the sentences for both the attempted murder and the assault convictions were set to run concurrently with each other. Because Smith has failed to establish prejudice as a result of counsel's alleged omission, he cannot succeed on his claim of ineffective assistance of trial counsel. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

**CONCLUSION**

For the reasons stated above, petitioner John Smith's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      January 30, 2006
            Rochester, New York.